UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------×

AMRITA SEWKUMAR,

                  *Plaintiff*,

       *v*.

BANK OF AMERICA, N.A.

                  *Defendant*.

-------------------------------------------------------------------------×

**FIRST AMENDED
COMPLAINT**

**14 Civ. 6149**

Plaintiff Amrita Sewkumar, by her counsel, The Harman Firm, PC, alleges for her First Amended Complaint against Defendant Bank of America, N.A., as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff Amrita Sewkumar ("Mrs. Sewkumar") worked as a Sales and Service Specialist for Defendant Bank of America, N.A. ("Defendant" or "BOA").  This action seeks damages for the illegal termination of her employment based upon race under the Civil Rights Act of 1866, 42 U.S.C. § 1981 and for the illegal termination of her employment based upon race and national origin under New York State Human Rights Law as codified at N.Y.S. EXEC. LAW, Art. 15 § 296 ("NYSHRL").  Defendant engaged in a deliberate pattern of discrimination against employees of color.

## JURISDICTION AND VENUE

2.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as Defendant violated Plaintiff's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

3.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claim brought under New York State law.

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York because a substantial part of the events giving rise to the claim occurred within this District.

## TRIAL BY JURY

5.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

6.      At all times relevant hereto, Plaintiff Amrita Sewkumar was and is a resident of Nassau County, NY.

7.      At all times relevant hereto, Defendant BOA is a business corporation organized under the laws of Delaware with its principal place of business at 100 North Tryon Street, Charlotte, NC 28255.

## STATEMENT OF FACTS

8.      Plaintiff Amrita Sewkumar is Guyanese and dark-skinned.

9.      In and around November 2006, Mrs. Sewkumar started working as a teller with Defendant BOA at its Lawrence branch.

10.     In and around November 2007, given her hard work and dedication, Mrs. Sewkumar was promoted to a Sales and Service Specialist ("SSS") at the Lawrence branch. She worked as an SSS at the Lawrence branch for five (5) years.

2

11.    In and around November 2011, Mrs. Sewkumar requested a transfer to BOA's East Rockaway branch so that she could be closer to home and spend more time caring for her children.

12.    In and around July 2013, while working at the East Rockaway branch in a permanent SSS position, Regional Manager Harry Frangas demoted Mrs. Sewkumar to a "floater."

13.    A "floater" is an employee who does not have a permanent branch location and is moved from branch to branch as positions open and close.  Being a "floater" was a hardship for Mrs. Sewkumar and Mr. Frangas was aware of this.  Moreover, there was no legitimate legal reason for Mrs. Sewkumar to be a "floater."

14.    Mr. Frangas has a history of using dark-skinned employees as "floaters" and moving them around to different branch locations in an illegal effort to force them to resign from their employment with BOA.

15.    Alternatively, Mr. Frangas manufactures bogus reasons to terminate hard-working employees solely due to the "darker" color of their skin.  For example, in and around June 2013, Mr. Frangas fired a black woman, an Elmont Branch Assistant Manager, who, upon information and belief, worked for BOA for approximately twenty (20) years, and substituted her with a light-skinned Hispanic woman.

16.    In an effort to find a permanent work location, Mrs. Sewkumar searched BOA's intranet and found an open SSS position at its Island Park branch.

17.    In and around July 2013, Mrs. Sewkumar called Sharon Castiglia, Island Park's Branch Manager, inquiring whether she could apply for the position since it stated that Spanish

speakers were preferred.  Mrs. Sewkumar does not speak Spanish.  Ms. Castiglia stated that Spanish was not a requirement and that Mrs. Sewkumar could and should apply, which she did.

18.    A few days later, Mr. Frangas approached Mrs. Sewkumar and told her that she would be transferred to the Island Park branch.  However, he told her it would only be a temporary position as he claimed he needed a Spanish-speaking person instead.

19.    Instead of placing Mrs. Sewkumar in a permanent SSS position, the discriminatory transfers continued.  On or about July 1, 2013, Mrs. Sewkumar was transferred to the Island Park branch to fill a SSS position, but only temporarily.

20.    On or about July 6, 2013, the Island Park branch was robbed while Mrs. Sewkumar was working there temporarily as a SSS and as teller (SSS representatives sometimes also work as tellers), during which robbery the teller next to Mrs. Sewkumar was held at gunpoint.

21.    Mrs. Sewkumar was emotionally distraught and traumatized by the gunpoint robbery, so close to her, at the Island Park branch.

22.    On or about July 18, 2013, Mrs. Sewkamur was notified that her son was in severe pain, a condition which two (2) days later caused him to be hospitalized and then in rehabilitation for the approximately three (3) ensuing months.  Upon notice of her son's ill condition, Mrs. Sewkumar requested that she be allowed to leave work two (2) hours early to attend to him.

23.    The Branch Manager, Ms. Castiglia, gave Mrs. Sewkumar permission to leave work to attend to her ill son; however, Ms. Castiglia wrote-up Mrs. Sewkumar for leaving two

(2) hours early.  Upon information and belief, this write-up was instructed and/or encouraged by Mr. Frangas, Ms. Castiglia's supervisor, and/or Human resources, or both.

24.    In and around the end of July 2013, Mrs. Sewkumar was transferred to the Baldwin branch of BOA.

25.    In and around August 2013, Mrs. Sewkumar was transferred to the Baldwin Harbor branch of BOA.

26.    While Mrs. Sewkumar was at the Baldwin Harbor branch, Mr. Frangras demoted the then Black female SSS representative to teller.

27.    Shortly after the Black female SSS representative's demotion to teller, Mr. Frangas offered Mrs. Sewkumar this position, but at reduced hours from forty (40) hours per week to twenty (20) hours per week, for no apparent reason.

28.    Mrs. Sewkumar told Mr. Frangas that she could not accept the position because she had two (2) children in college and that she would face undue financial hardship if she took the position.

29.    One week later, Mrs. Sewkumar learned that the same Baldwin Harbor branch SSS position was posted as "open", for forty (40) hours per week, a position for which she was qualified.

30.    Mrs. Sewkumar asked the Baldwin Harbor Branch Manager, Kevin Richberg, if she could apply for that position.  He told her that she could not because Mr. Frangas already had someone in mind for the position.

31.     Mrs. Sewkumar called BOA Human Resources to complain and to inquire why, for the second time, she was barred from applying for a position for which she already was qualified as an experienced SSS. Human Resources advised her to speak to Mr. Frangas.

32.     Mrs. Sewkumar made several attempts to contact Mr. Frangas. He ignored her voicemails and never returned her calls.

33.     The permanent SSS position was eventually filled by an external hire, a white individual.

34.     In and around October 2013, the Baldwin Harbor branch was robbed while Mrs. Sewkumar was working as a SSS representative and temporarily filling in as a teller. This time, Mrs. Sewkumar was held at gunpoint.

35.     As a result of this second robbery, Mrs. Sewkumar again was emotionally distraught and traumatized.

36.     Shortly thereafter, Mr. Frangas transferred Mrs. Sewkamur to the Freeport branch of BOA that, upon information and belief, he knew was a more dangerous branch than the Baldwin Harbor branch, thereby causing Mrs. Sewkamur further anxiety and emotional distress.

37.     At the Freeport branch, Mr. Frangras relegated Mrs. Sewkamur to a teller position, for approximately two (2) to three (3) weeks.

38.     On or about November 25, 2013, Mr. Frangas transferred Mrs. Sewkumar to BOA's Elmont branch that, upon information and belief, he knew was even more dangerous than the Freeport branch, thereby creating further anxiety, emotional distress, and substantial hardship for her.

6

39.     The frustration and humiliation of the constant branch transfers, shifting positions, not knowing if she had a position and/or where, along with the unsafe branches at which she was forced to work, all contributed to Mrs. Sewkumur suffering severe anxiety and emotional distress.

40.     On or about November 29, 2013, Mrs. Sewkumar received a call from her son that he was ill. He had recently been discharged from the hospital due to his methicillin-resistant staphylococcus aureus ("MSRA") infection and two surgeries.

41.     At the time, the Elmont Branch Manager, Ramna Iqbal, was not available, so Mrs. Sewkumar attempted to contact Mr. Frangas to request to leave work to care for her son.

42.     Mr. Frangas never answered or returned Mrs. Sewkumar calls.

43.     The Branch Assistant Manager, Carman Escudero, told Mrs. Sewkumar that she could leave to take her son to the doctor.

44.     Mrs. Sewkumar worked the next day, November 30, 2013, without incident, and was off from work the following day.

45.     On or about December 3, 2013, Mrs. Sewkumar spoke to Ms. Iqbal and explained to her what had happened on November 29, 2013 while Ms. Iqbal was out of the office.

46.     Approximately thirty (30) minutes after Mrs. Sewkumar and Ms. Iqbal met, Mrs. Sewkumar was called into Ms. Iqbal's office and was told that she was being written up and placed on final warning due to her attendance record.

47.     Mrs. Sewkamur reluctantly signed the write-up, without issue. Mrs. Sewkumar asked for a copy of the write-up. Ms. Iqbal said she would provide it, whereupon Mrs. Sewkamur returned to her desk.

7

48.     Approximately thirty (30) minutes later, Ms. Iqbal called Mrs. Sewkumar into her office for a second time and told her that she was being written up again and being placed on another final warning, this time due to her attitude.

49.     Mrs. Sewkumar refused to sign the second write-up.

50.     Approximately thirty (30) minutes after, Mrs. Iqbal told Mrs. Sewkumar that her employment with BOA was terminated and to leave the premises immediately or she would call security.

51.     Mrs. Sewkumar left the office and called Mr. Frangas to explain what had happened, to which Mr. Frangas responded that he could not speak to her and that she was fired.

52.     Mrs. Sewkumar then called Mr. Frangas' superior, Marc Perez.

53.     Mr. Perez never answered or returned her call.

54.     Upon information and belief, the afore-described two (2) write-ups by Ms. Iqbal and Mrs. Sewkumar's termination were instructed and/or encouraged by Mr. Frangas, Ms. Iqbal's supervisor, and/or Human Resources, or both.

55.     Mrs. Sewkumar left BOA deeply distraught, emotionally devastated, and very depressed by BOA's discriminatory conduct, especially after she gave the defendant seven (7) years of committed service.

56.     Mrs. Sewkumar is currently unemployed.

CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 for Illegal Termination Based on Race**

57.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 56 with the same force as though separately alleged herein.

58.     Defendant Bank of America, N.A. violated 42 U.S.C. § 1981 by wrongfully terminating Plaintiff due to her race.

59.     As a direct and proximate consequence of Defendant's illegal race discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

60.     Plaintiff is entitled to compensatory damages, liquidated damages, and pursuant to 42 U.S.C. § 1988(b), costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

**SECOND CAUSE OF ACTION**
**Violation of NYSHRL for Illegal Termination Based on Race and National Origin Discrimination and Hostile Work Environment**

61.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 60 with the same force as though separately alleged herein.

62.     NYSHRL § 296 mandates that no employer discriminate against any employee in compensation or in terms, conditions or privileges of employment on the basis of race and/or national origin.

63.     Defendant Bank of America, N.A. violated NYSHRL § 296 by engaging in a practice of undermining her position and then wrongfully terminating Plaintiff due to her race and national origin.

64.     As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

65.     Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  For the first claim, actual damages to be determined at trial, but in no event less than $500,000;

B.  For the second claim, actual damages to be determined at trial, but in no event less than $500,000;

C.  An award of compensatory and punitive damages;

D.  Pre-judgment and post-judgment interest;

E.  Attorneys' fees and costs; and

F.  Such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            December 3, 2014

By:  _____

Walker G. Harman, Jr. [WH-8044]
Ronnie L. Silverberg [RS-6881]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiff*
1776 Broadway, Suite 2030
New York, NY 10019
(212) 425-2600
wharman@theharmanfirm.com